# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

KAREN SHOEMAKER,

       Plaintiff,

  v.

E.I. DUPONT DE NEMOURS AND COMPANY,

       Defendant.

Case No. 2:08-cv-333
JUDGE GREGORY L. FROST
Magistrate Judge Norah McCann King

## OPINION AND ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment as to the Individual Claims of Plaintiff Karen Shoemaker ("Defendant's Motion") (Doc. # 26), Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment (Doc. # 29), and Defendant's Reply in Support of Defendant's Motion for Summary Judgment (Doc. # 30). For the reasons that follow, the Court **GRANTS** Defendant's Motion.

### I. Background

Plaintiff Karen Shoemaker began her employment with Defendant E.I. DuPont Nemours and Company in January 1992. From that time until 2004 she performed her job without negative incident and was promoted through the ranks in her job as an operator from Level 1 through Level 5, the highest level for that job title.

From 2001 through 2004, Plaintiff requested and Defendant granted several leaves under the Family and Medical Leave Act, 26 U.S.C. § 2601, to care for her ailing mother and elderly father. In November 2004, Plaintiff's mother passed away. Around that same time, Plaintiff

1

was diagnosed with depression and anxiety disorder and prescribed medication. In January 2005, after approximately six weeks of leave following the loss of her mother, Plaintiff returned to work but she began to experience difficulty remaining awake while away from work and having other sleep related issues. Plaintiff also began to experience concentration problems at that time. Plaintiff missed a work meeting that was scheduled for an hour before the start of her shift on January 20, 2005, because she had forgotten about it.

On three occasions in June 2005, Plaintiff's supervisor, and the area superintendent on the latter two occasions, found her sleeping at work. On June 23, 2005, Defendant placed Plaintiff on probation for one year because of these incidents and informed that she had to remain clear and alert at work or face discipline that could result in discharge. In July 2005, Plaintiff underwent a sleep study. Plaintiff's pulmonologist informed her that she had narcolepsy and prescribed her medication.

In August 2005, Plaintiff's father passed away and Plaintiff was granted further medical leave, during which time her depression and anxiety disorder required her to be hospitalized for treatment and in-patient therapy. After her release from the hospital, Plaintiff continued on medication and was treated on an outpatient basis. On September 26, 2005, Plaintiff provided Defendant with documentation from the hospital indicating that Plaintiff needed one to three months of medical leave from work, which she was given.

In December 2005, Plaintiff began treatment with another psychiatrist for her depression related problems. On December 12, 2005, Plaintiff provided Defendant with medical documentation of her inability to work and was granted further leave.

Plaintiff and Defendant agreed that Plaintiff would return to work on February 1, 2006.

They agreed that Plaintiff would resume work at a decreased schedule and she would eventually work up to a full time schedule. At the meeting in which this agreement was reached, Plaintiff requested that Defendant lift her probation, but Defendant denied the request and extended the probationary period to compensate for the time that she missed while on leave. While composing her return to work plan with Defendant, Plaintiff requested no accommodations as she believed that she was able to perform all of her daily duties at that time.

As part of the return to work plan, Plaintiff was required to re-qualify for the various levels of the operator position for which she had already qualified in her previous years with the company as well as learn the changes that had occurred in the time she was away from work. Plaintiff retained her Level 5 compensation during this time. On March 28, 2006, Plaintiff took the first test, which consisted of forty different skills and passed all but one, mastery of the camera system skills. Plaintiff was terminated as a result of the failure.

Since her termination in April 2006, Plaintiff has been diagnosed with similar depression symptoms, including adjustment disorder, in both July 2007 and July 2008.

On April 10, 2008, Defendant removed this action to this Court from the Pickaway County Court of Common Pleas. (Doc. # 1.) On August 29, 2008, Plaintiff filed an amended complaint. (Doc. # 14.) In that complaint, Plaintiff alleges that she was terminated based upon her disabilities in violation of the Americans with Disabilities Act, 42 U.S.C. § 12112(a) ("ADA") and under the Ohio Revised Code § 4112.02.

## II. Standard

Rule 56 of the Federal Rules of Civil Procedure provides for judgment as a matter of law if there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(c). In determining

whether there is a genuine issue as to any material fact, the evidence "must be viewed in the light most favorable" to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)).

In ruling on a motion for summary judgment "[a] district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *Glover v. Speedway Super Am., LLC,* 284 F. Supp.2d 858, 862 (S.D. Ohio 2003) (citing *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989)). Instead, a "court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties." *Id.*; Fed. R. Civ. P. 56(c).

### III. Analysis

Defendant moves for summary judgment on Plaintiff's claims for relief under the ADA and under the Ohio Revised Code. Because both parties agree "that an action for handicap

discrimination under Ohio law" does not "entail[] a different legal analysis than that for disability discrimination under the ADA, and because Ohio case law tends to suggest that it entails the same legal analysis as that under the ADA, [the Court] will analyze [P]laintiff's state and federal discrimination claims under Ohio Revised Code § 4112 and the ADA, respectively, solely under the ADA." *Brenneman v. Medcentral Health Sys.*, 366 F.3d 412, 418 (6th Cir. 2004) ("Because neither party has argued that an action for handicap discrimination under Ohio law entails a different legal analysis than that for disability discrimination under the ADA, and because Ohio case law tends to suggest that it entails the same legal analysis as that under the ADA, we will analyze plaintiff's state and federal discrimination claims under Ohio Revised Code § 4112 and the ADA, respectively, solely under the ADA.") (citations omitted)).

Plaintiff presents circumstantial, as opposed to direct, evidence of discrimination, and, as a result, the Court applies the familiar three step burden-shifting framework originally articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and later refined in *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981). The initial burden rests with the plaintiff to establish a *prima facie* case of discrimination. *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1186 (6th Cir. 1996). If the plaintiff establishes a *prima facie* case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the challenged employment decision. *Burdine*, 450 U.S. at 253. Should the employer carry this burden, the burden returns to the plaintiff to prove by a preponderance of the evidence that the employer's proffered reason was in fact a pretext designed to mask illegal discrimination. *See id.*

To establish a *prima facie* case of disability-based discrimination under the ADA, a plaintiff must establish each of the following five elements:

> (1) that he or she is disabled; (2) [he or she] is otherwise qualified for the job, with or without "reasonable" accommodation; (3) [he or she] suffered an adverse employment decision; (4) the employer knew or had reason to know of his or her disability; and (5) after rejection or termination, the position remained open or the disabled individual was replaced.

*Monette*, 90 F. 3d at 1185 (citations omitted). The final element "may also be satisfied by showing that similarly situated non-protected employees were treated more favorably." *Jones v. Potter,* 488 F.3d 397, 404 (6th Cir. 2007) (citing *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1246 (6th Cir. 1995)).

"The threshold issue in any action brought under the ADA is whether the plaintiff is a person with a disability." *Kiphart v. Saturn Corp.*, 251 F.3d 573, 582 (6th Cir. 2001). "A person is 'disabled' within the meaning of the ADA if he (1) has some impairment substantially limiting him in one or more major life activities, (2) has a record of such an impairment, or (3) is regarded by his employer as having such an impairment." *Id.* (citation omitted). *See also* 42 U.S.C. § 12102(1) (setting out definition).

In the instant action, Defendant argues that Plaintiff's disability discrimination claim for relief cannot survive summary judgment because Plaintiff was not actually disabled nor did Defendant regard her as disabled.[1] Defendant's arguments are well taken.

**A. Category (1): Actually Disabled**

Plaintiff claims that she was disabled from the sleep impairment narcolepsy and from the mental impairments depression, anxiety, and adjustment disorder. Thus, Plaintiff must raise a

---

[1]Although Plaintiff does not allege a "regarded as" claim for relief in the complaint, Defendant moves for summary judgment on a regarded as claim and Plaintiff opposes summary judgment on a regarded as claim. Thus, the Court will address this issue.

genuine issue of material fact as to whether her sleep impairment and/or depression related impairments substantially limited any major life activity. Substantially limits means that an individual is unable to perform a major life activity that the average person in the general population can perform; or is significantly restricted as to the condition, manner, or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. *See* 29 C.F.R. § 1630.2(j)(1); *Penny v. United Parcel Serv.*, 128 F.3d 408, 414 (6th Cir. 1997).

   **1. Narcolepsy**

The following is the entirety of Plaintiff's argument with regard to whether her narcolepsy constitutes a disability:

> Plaintiff's narcolepsy limits the major life activity of sleeping. Although it is controlled with medication, DuPont documented instances of Plaintiff falling asleep unintentionally at work.

(Doc. # 29 at 15.)

There is no dispute that sleeping qualifies as a major life activity under the ADA. However, Plaintiff's argument with regard to the narcolepsy issue misses the mark entirely. That is, Plaintiff has failed to show, or even attempt to show, that the effects of her impairment of narcolepsy substantially limited her ability to sleep. Perhaps Plaintiff is insinuating that her unintentional sleeping at work indicates substantial limitation in her ability to sleep during the night. If that is the case, Plaintiff has failed submit any evidence to support this position. *See e.g., Boerst v. Gen. Mills Operations*, 25 F. App'x 403, 407 (6th Cir. 2002) ("Boerst put in evidence that he could 'only get two-four hours' sleep a night"). Or perhaps, Plaintiff is

7

confused as to the major life activity her narcolepsy affects, stating that it is sleep but setting forth evidence that the effect was on her ability to work. Whatever the case, this Court must accept Plaintiff's arguments and evidence as it is presented and is, in any event, constrained from making Plaintiff's arguments for her.

Moreover, even if Plaintiff had shown that her narcolepsy substantially limited her ability to sleep before she was treated with medication, when determining if an ADA plaintiff suffers a substantial limitation, this Court must consider Plaintiff's condition after she was treated with the medication. *See Sutton v. United Airlines, Inc.*, 527 U.S. 471 (1999).[2] Here, Plaintiff testified that since she began taking the narcolepsy medication, she has not had problems with falling asleep suddenly. Consequently, the Court concludes that Plaintiff has failed to raise a genuine issue of material fact as to whether her narcolepsy substantially limited her ability to sleep.

**2. Depression, anxiety, adjustment disorder**

Plaintiff claims that her depression, anxiety, and adjustment disorder are mental impairments that substantially limited her ability to engage in the major life activities of thinking, concentrating, and working. Working is to be treated as a residual category resorted to only when a complainant cannot show she or he is substantially impaired in any other, more concrete major life activity. *Sutton*, 527 U.S. at 471; *Henderson v. Ardco, Inc.*, 247 F.3d 645, 650 (6th Cir. 2001); 29 C.F.R. § 1630.2(j). Thus, the Court will first address whether Plaintiff's

---

[2]Congress recently amended the ADA, in the ADA Amendments Act of 2008, which took effect on January 1, 2009, Pub. L. No. 110-325, 122 Stat. 3553 (2008). *Sutton* was superceded in part by that statute. *See Verhoff v. Time Warner Cable, Inc.*, 299 Fed. Appx. 488, 492 n.2 (6th Cir. 2008). However, the amendments to the ADA are not retroactive and have no application to the case at bar. *See id.*; *Macdonald v. UPS*, No. 07-12022, 2009 U.S. Dist. LEXIS 47457, at *26 (E.D. Mich. June 5, 2009), *Jones v. Wal-Mart Stores*, No.: 3:07-CV-461, 2009 U.S. Dist. LEXIS 47242, at *7-9 n.2 (E.D. Tenn. June 5, 2009) (instructive analysis and gathering of cases).

mental impairments substantially limited her ability to think or concentrate before it considers whether they substantially limited her ability to work.

### a. Plaintiff's depression, anxiety, and adjustment disorder did not substantially limit her ability to think or concentrate.

With regard to thinking and concentrating, in an unpublished decision the Sixth Circuit rejected a plaintiff's contention that her migraine headaches limited her major life activity of concentration stating that "[c]oncentration may be a significant and necessary component of a major life activity, such as working, learning, or speaking, but it is not an 'activity' itself." *Linser v. State of Ohio, Dep't of Mental Health*, No. 99-3887, 2000 U.S. App. LEXIS 25644, 2000 WL 1529809 (6th Cir. Oct. 6, 2000). This Court, however, need not decide whether concentration is a major life activity because even if it were, Plaintiff has failed to show a substantial limitation in her ability to engage in it.

The only evidence Plaintiff presents in support of her argument that she is substantially limited in her ability to think and/or concentrate is that her psychiatrist testified that her ability to concentrate was impaired in comparison to himself and to Plaintiff's attorney, her lack of concentration caused her to have a difficult time completing her deposition, and that she is preoccupied with the loss of her job. However, even when viewing this evidence in the light most favorable to Plaintiff, it falls short of indicating substantial limitation in thinking and concentrating.

First, Plaintiff's psychiatrist testified that an adjustment disorder is a temporary condition triggered by a stressor event. Generally, temporary restrictions are not substantially limiting. *See Roush v. Weastec, Inc.*, 96 F.3d 840, 843-44 (6th Cir. 1996) ("Because plaintiffs kidney

9

condition was temporary, it is not substantially limiting and, therefore, not a disability under the ADA."). Here, there is nothing to indicate that Plaintiff's adjustment disorder should be an exception to the general rule regarding temporary impairments. Second, none of the other evidence indicates that Plaintiff was "unable" to think or concentrate at the level of the average person in the general population, nor does it indicate that Plaintiff was "significantly restricted as to the condition, manner, or duration under which" she could think or concentrate "as compared to the condition, manner, or duration under which the average person in the general population can perform" the activities of thinking and concentrating. 29 C.F.R. § 1630.2(j).

Thus, the Court concludes that Plaintiff has failed to raise a genuine issue of material fact as to whether her depression, anxiety, and adjustment disorder substantially limited her ability to think or to concentrate.

### b. Plaintiff's depression, anxiety, and adjustment disorder did not substantially limit her ability to work.

With regard to the major life activity of working, a plaintiff must be limited not just from her particular job, but from a substantial class or broad range of jobs:

> To be substantially limited in the major life activity of working, then, one must be precluded from more than one type of job, a specialized job, or a particular job of choice. If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs. Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs.

*Sutton*, 527 U.S. at 492. *See also Burns v. Coca-Cola Enterprises, Inc.*, 222 F.3d 247, 253-54 (6th Cir. 2000) (same). Further:

> To determine if the claimant is precluded from a substantial class or broad range of jobs, we compare his access to jobs to the access available to a non-injured individual with similar training and experience, looking specifically to the labor market in the claimant's geographic vicinity.

*Sutton*, 527 U.S. at 491-92.

In the instant action, Plaintiff presents evidence that her lack of concentration resulted in her missing a work meeting and that one of her treating physicians indicated that her decreased concentration prevented her from performing her job at that time. However, that evidence, even when taken in the light most favorable to Plaintiff, is insufficient to raise a genuine issue of material fact as to whether she was substantially limited in her ability to work. That is, Plaintiff presents no evidence to allow the Court to "compare h[er] access to jobs to the access available to a non-injured individual with similar training and experience, looking specifically to the labor market in the [her] geographic vicinity." *Id. See also Mahon v. Crowell*, 295 F.3d 585, 589 (6th Cir. 2002) (no genuine issue of material fact raised because the plaintiff "failed to produce any evidence regarding the number of pediatrics nursing jobs from which she is excluded or the availability of pediatric nursing positions for which she is qualified"). Being unable to perform her own job is simply not enough.

Consequently, the Court concludes that Plaintiff has failed to raise a genuine issue of material fact as to whether her depression, anxiety, and/or adjustment disorder substantially limited her ability to engage in the major life activity of working.

### 3. Conclusion of actually disabled category

Based on the foregoing, the Court concludes that, even when viewing the evidence in the light most favorable to Plaintiff, Plaintiff has failed to raise a genuine issue of material fact as to whether she was actually disabled under the ADA, and therefore, cannot establish her *prima facie* case of disability discrimination. Accordingly, the Court **GRANTS** Defendant's Motion

as to that claim for relief.

## B. Category (3): Regarded as Disabled

Plaintiff claims that Defendant regarded her as disabled from her ability to work in violation of the ADA. "This part of the [ADA] is intended to allow individuals to be judged according to their actual capacities, rather than through a scrim of 'myths, fears, and stereotypes' accruing around a perceived impairment." *Mahon*, 295 F.3d at 592 (citing *Sutton*, 527 U.S. at 489-90). The Sixth Circuit instructs:

> To determine whether an individual is "regarded as disabled," we apply the test laid out in *Sutton*:
>
>> There are two apparent ways in which individuals may fall within this statutory definition: (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities.
>
> 527 U.S. at 489. To run afoul of the act, then, a covered entity must hold a mistaken belief that a claimant is disabled within the meaning of the [ADA]. *See Ross* [*v. Campbell Soup Co.*,] 237 F.3d [701,] 709 (6th Cir. 2001).

*Mahon*, 295 F.3d at 592.

Further, in a "regarded as" disability discrimination claim that relies upon the major life activity of working, a plaintiff needs to show that she is regarded as disabled from her general type of work in that general geographic area. *Moorer v. Baptist Mem'l Health Ctr.*, 398 F.3d 469, 484 (6th Cir. 2005).

In the case *sub judice*, Plaintiff argues that Defendant regarded her as substantially limited from performing her job because on one occasion Plaintiff's supervisor removed her from her work position when he observed Plaintiff acting "hyper." (Plaintiff's Dep. Ex. 15;

12

Doc. # 26-1 at 74). Plaintiff referred to her behavior as a panic attack. The medical department assessed Plaintiff on that day and cleared her to return to work. Her supervisor directed Plaintiff to tasks other than the one she was performing when she had the panic attack for the duration of that day as well as the next. This evidence, however, simply does not indicate that Defendant mistakenly regarded Plaintiff's depression related impairments substantially limited her ability to work nor does it indicate that Defendant mistakenly believed that Plaintiff possessed an impairment that substantially limited her ability to work. Indeed, Plaintiff has not even attempted to show that Defendant held any mistaken belief about her. *See Mahon*, 295 F. 3d at 592 ("Mahon has not shown that TVA regarded him as disabled under the statutes because he has not shown that TVA held any *mistaken* belief about him." (emphasis in the original). It appears that Plaintiff too believed, at least during the panic attack, that she could not continue the work she was doing.

Moreover, Plaintiff utterly fails to present evidence, or to even argue, that she was regarded as disabled from her general type of work in her general geographic area. *See Moorer*, 398 F.3d at 469.

Accordingly, even when viewing the evidence in the light most favorable to Plaintiff, Plaintiff has failed to raise a genuine issue of material fact as to whether Defendant regarded her as disabled from working, and therefore, cannot establish her *prima facie* case of "regarded as" disability discrimination. Thus, the Court **GRANTS** Defendant's Motion on this claim for relief.

### IV. Conclusion

For the reasons set forth above, the Court **GRANTS** Defendant's Motion. (Doc. # 26.)

The Clerk is **DIRECTED** to **ENTER JUDGMENT** in accordance with this Opinion and Order.

**IT IS SO ORDERED.**

/s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE